## Reed's Estate.

The facts appear from the adjudication of HENDERSON, J., and from the re-adjudication of SINKLER, J.

### Adjudication.

Charles D. Reed died March 24, 1889, and the trust arises under the second item of his will whereby he bequeathed the sum of $50,000 (which was increased by codicil by the addition of one-half of his residuary estate) in trust to pay to his sister, Maria Louisa Jackson, the sum of $2400 annually during her life, and at her death (and she died July 5, 1906) to pay the net income therefrom in equal shares to her three children, Helen L. Ballou, Lucy R. Sanderson and Horace Jackson, for their respective lives, and the principal of one-third upon the death of each to his or her respective issue, and in default of issue, to the right heirs of such deceased child.

Helen L. Ballou, one of the life tenants, died February 16, 1930, whereby the trust terminated as to one-third of the fund. She left surviving one child, Marie Louise Ballou (now Biggar), and no other children or issue of deceased children.

Lucy R. Sanderson and Horace Jackson, the other life tenants, are still living, and the trust continues for their benefit as to two-thirds of the fund.

The petition states that Helen L. Ballou died a resident of the State of

Colorado, leaving a will, probated in that jurisdiction, and letters of administration *c. t. a.* were granted to The First National Bank of Colorado Springs by the County Court of El Paso County, State of Colorado. There is annexed hereto an exemplified copy of the record in that jurisdiction showing such appointment, and also an affidavit stating that Helen L. Ballou left no debts in this jurisdiction. The proportion of the accrued income due and unpaid at the time of her death may, therefore, be awarded to the administrator of her estate in the State of Colorado.

### Re-adjudication.

By the adjudication of Henderson, J., filed May 28, 1930, and hereto annexed, the share of principal from which Helen L. Ballou had been receiving the income was awarded to her surviving child, Marie Louise Biggar, it having been stated in the petition for distribution at the prior audit that the said Helen L. Ballou left surviving only one child, the said Marie Louise Biggar, and no issue of deceased children.

Subsequently, a petition was presented by Marie Estelle Ballou, widow of Kingsley Ballou, a deceased son of Helen L. Ballou, asking that the adjudication be opened, and on October 28, 1930, a citation was issued to show cause why the adjudication of Henderson, J., should not be opened and reviewed.

The petition asking for the review alleged that Kingsley Ballou, who predeceased his mother, had a vested interest in one-half of the fund held in trust for the benefit of Helen L. Ballou, and that his widow had no notice of the audit, and, therefore, no opportunity to present her claim.

On December 15, 1930, a decree was entered by Lamorelle, P. J., directing that the adjudication be opened and reviewed, and the adjudication recommitted to the Auditing Judge. As the account had originally been on the audit list of Thompson, J., my predecessor, the adjudication was recommitted to me for further proceedings.

The decedent died March 24, 1889, having made his last will and codicils, all of which were admitted to probate. By clause second of his will he created a trust, the income to be paid to his sister during her life, and after her death (which occurred on July 5, 1906) to divide the trust estate into three equal portions, to be held in trust for her three children *nominatim*, the income to be paid to them respectively during their respective lives, "at the decease of any child, then in trust to transfer the principal of his or her share to the lawful issue of such deceased child (if more than one, in equal shares), and in default of any such issue to the right heirs of such deceased child." There ensues a clause providing for the contingency of any of the testator's nephews or nieces dying in the mother's lifetime, which we need not construe since all of them survived her.

The residuary clause of the will provides that the residuary estate shall be added to the two trust funds of $50,000 each, created by the second and third items of the will.

One of the testator's nieces, Helen L. Ballou, died February 16, 1930, and the share of principal whereof she enjoyed the income is now distributable, and the words above quoted must be construed in order to determine the quality of the estate enjoyed by the children of that niece.

One of the children of Helen L. Ballou, namely, Kingsley Ballou, survived the testator for thirty-one years, but died before his mother. Did Kingsley Ballou have a vested or contingent remainder in the decedent's estate? If the former, his share passes under the provisions of his will, but if the latter, his interest ceased at his death and nothing would pass under his will.

Numerous cases are cited by counsel in support of both contentions. Counsel for each of the contending parties has cited Buckman's Estate, 13 D. & C. 653, as the latest reported case coming before this court. Neither of them has cited Carstensen's Estate, 196 Pa. 325, which has been frequently cited and followed. It was there held that a legacy will be regarded as vested rather than contingent unless the language of the will indicates that the testator had a different intention. An estate not in possession is vested if it is certain to take effect in possession by lasting longer than the precedent estate, if there is a person in existence at the time of the creation of the trust who can enjoy the remainder in accordance with the terms of the instrument creating the trust. The principle may be somewhat differently expressed as follows: Legacies payable at a future time, certain to arrive and not subject to condition precedent, are deemed vested when there is a person *in esse* at the time of the testator's death capable of taking when the time arrives, although his interest be liable to be defeated altogether by his own death. In Carstensen's Estate the devise on the death of the life tenant was to "my brothers and sisters, the child or children of any who may then be dead to take and receive the share that his or their parent would have taken if living." The brothers and sisters were held to enjoy a vested interest, subject to divestiture upon death preceding the death of the life tenant.

In Buckman's Estate, *supra*, a trust was created, the income to be paid to testator's daughter during her lifetime, and at her death "the principal to be equally divided among my other children. Should any be deceased leaving children said share is to be equally divided between them." A son of the testator died after the testator but before the life tenant, and the executrix of his estate was held entitled to the share of the corpus he would have taken had he survived the life tenant.

In the present case, the life estate given the testator's sister may be disregarded in comparing this case with Carstensen's Estate and Buckman's Estate. A life estate is given to Helen Ballou among others: Her son, Kingsley Ballou, died before her but many years after the testator. The remainder is given to her "lawful issue." There is no condition precedent to be fulfilled. He was a person *in esse* at the time of testator's death, capable of taking at the termination of the life estate. His right of possession was subject to divestiture by his antecedent death, but this circumstance does not affect the quality of his interest.

In Lewis's Estate, 15 D. & C. 665, Gest, J., in discussing the term "legal issue," says it is not to be supposed testator had in mind any distinction between legitimate and illegitimate offspring, and that the word "legal" had no tangible meaning.

The word "issue" has been held to mean children in some cases; in others, descendants indefinitely. In the present case Kingsley Ballou would be included under either definition.

"Lawful" issue, the term here used, had no particular significance, just as was the case in the use of the word "legal" in Lewis's Estate; and "issue" is an equally effective term of limitation as was "brothers and sisters" in Carstensen's Estate or "my other children" in Buckman's Estate.

The will of Kingsley Ballou gives his entire estate to his widow, Marie Estelle Ballou, and appoints her executrix. She is entitled as executrix to one-half of the estate held in trust for his mother, Helen Ballou.

The adjudication of Henderson, J., filed May 28, 1930, is accordingly amended as follows: The share of testator's estate heretofore awarded to Marie Louise Biggar is now awarded, one-half to Marie Louise Biggar and

one-half to Kingsley Ballou, the share of the latter to be paid to the personal representative of his estate upon compliance with section 58 (f) of the Fiduciaries Act of 1917.

*Walter Willard*, for exceptant; *Francis Chapman*, contra.

VAN DUSEN, J., November 9, 1931.—The trust was for testator's sister Maria for life, and then in three shares for Maria's three named children for life, with remainder of each share "to the lawful issue of such deceased child," and if no issue then to the right heirs of such deceased child. The child Helen, who was life tenant of the present share, had issue, two children, Kingsley and Marie, and Kingsley died in his mother's lifetime. There is no warrant for reading "issue" as "issue her surviving." A gift to "issue" without more does not imply a contingency of survivorship to the time of distribution. There is nothing in this will from which such a contingency can be inferred—not even a substitutionary gift to Kingsley's issue if he died in his mother's lifetime, as in Carson's Estate, 16 D. & C. 99, Buckman's Estate, 13 D. & C. 653, and Carstensen's Estate, 196 Pa. 325. There is a further provision for the event of Helen's death in her mother's lifetime (which did not happen), but nothing applicable to Kingsley's death in his mother's lifetime.

The exceptions are dismissed and the re-adjudication is confirmed absolutely.